# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

| | |
|---|---|
| CARL EATON, heir of JOHN EATON and MITCHELL SHUMWAY, heir of MARY ERVA SHUMWAY EATON,<br><br>　　　　　　　Plaintiffs,<br>vs.<br><br>LEAH SHELTON (fka Leah Rishor) and PENSKE TRUCK LEASING COMPANY, L.P.,<br>　　　　　　　Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:12CV232 DAK |

This matter is before the court on Defendant Penske Truck Leasing Company, L.P.'s ("Penske") Motion for Summary Judgment. A hearing on the motion was held on February 27, 2014. At the hearing, Penske was represented by Timothy J. Curtis. Plaintiffs Carl Eaton and Mitchell Shumway were represented by Eric W. Hageman. Before the hearing, the court carefully considered the memoranda and other materials submitted by the parties. Since taking the matter under advisement, the court has further considered the law and facts relating to this motion. Now being fully advised, the court renders the following Memorandum Decision and Order.

## I. BACKGROUND

On August 1, 2011, John Eaton and his wife, Mary Erva Shumway Eaton ("the Eatons") were tragically killed in a head-on truck versus automobile collision when Defendant Leah Shelton ("Ms. Shelton") crossed the center line of US-191 near Blanding, Utah and collided with

their vehicle. Ms. Shelton was high on methamphetamine and driving a moving truck she had rented from Penske two days prior to the accident.

Plaintiffs in this case are the heirs of the decedents, and they filed this action against both Ms. Shelton and Penske. Plaintiffs' claim against Penske rests on their assertion that Penske negligently entrusted its moving truck to Ms. Shelton. Specifically, Plaintiffs allege, among other things, that when Ms. Shelton rented the Penske vehicle, she was under the influence of methamphetamine and that Penske knew or should have known that Ms. Shelton was under the influence of methamphetamine and should have refused to rent to Ms. Shelton. In addition, they allege that Penske knew or should have known that Ms. Shelton's Colorado driver's license was suspended at the time she rented the vehicle and should have refused to rent to Ms. Shelton. Finally, Plaintiffs contend that Ms. Shelton did not have automobile insurance at the time she rented the truck and that Penske is liable as a result.

In the instant motion, Penske seeks summary judgment in its favor, arguing that the undisputed facts demonstrate that Penske did not negligently entrust its vehicle to Leah Shelton because (1) Ms. Shelton was not intoxicated at the time she rented the vehicle, (2) Ms. Shelton presented a facially valid driver's license at the time she rented the vehicle, and (3) Ms. Shelton was not required to have a separate insurance policy or purchase supplemental insurance in order to rent the vehicle. Penske also contends that none of Penske's acts or omissions were the proximate cause of the Plaintiffs' loss. Accordingly, Penske maintains that it is entitled to summary judgment on Plaintiffs' claims against Penske. In response to the motion, Plaintiffs argue that genuine issues of material facts exist, preluding the court from entering summary judgment. Rather, they contend, these factual disputes must be decided by a jury.

## II. FACTUAL BACKGROUND[1]

On July 30, 2011, at approximately 12:11 p.m., Defendant Leah Shelton rented a 16-foot moving truck owned by Penske from Rent-A-Space in Grand Junction, Colorado. She intended to move with her two daughters to Tucson, Arizona to flee an abusive spouse. Ms. Stephanie Clark was the Penske agent who assisted Ms. Shelton in renting the Penske truck. Penske policies require a potential renter to present a facially valid driver's license in order to rent a vehicle. It is undisputed that, at that the time Ms. Shelton rented the Penske truck, her driver's license was temporarily suspended due to her failure to maintain automobile insurance, and it is undisputed that Ms. Shelton knew that her license had been suspended. There is a disagreement between the parties concerning whether a genuine issue of material fact exists as to whether Ms. Shelton presented a *facially* valid driver's license– or any license at all–to Ms. Clark at the time of the rental. Similarly, there is a dispute between the parties about whether a genuine issue of material fact exists as to whether Ms. Shelton was intoxicated at the time of the rental– and, if so, whether Ms. Clark should have known she was intoxicated. These disagreements as to whether Plaintiffs have created a genuine issue of disputed fact on these two subjects will be discussed below. It is undisputed that Ms. Shelton did not have automobile insurance of her own at the time she rented the Penske truck.

After renting the truck on July 30, 2011, Ms. Shelton loaded the truck with her belongings, and, on the morning of August 1, 2011, two days after Ms. Shelton rented the Penske truck, Ms. Shelton left Grand Junction, Colorado with her two young daughters. At

---

[1] The following facts are undisputed, except where noted.

approximately 6:20 p.m., Ms. Shelton was traveling south on State Road 191 near Blanding, Utah, when her vehicle crossed the center line and struck a vehicle headed northbound head on. The passengers of the northbound vehicle were Mary Erva Shumway Eaton, age 84, and John Eaton, age 89, from Blanding, Utah. Tragically, both Mr. Eaton and Mrs. Eaton were killed as a result of the accident.

It is undisputed that Ms. Shelton injected methamphetamine two hours before the accident and that her blood tested positive for methamphetamine and marijuana. She is currently serving a prison sentence at the Utah State Prison after pleading guilty to negligent homicide for the deaths of Mr. and Mrs. Eaton.

### III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion of summary judgment, the court views "all facts [and evidence] in the light most favorable to the party opposing summary judgment." *S.E.C. v. Smart*, 678 F.3d 850, 856 (10th Cir. 2012) (quoting *Grynberg v. Total S.A.*, 538 F.3d 1336, 1346 (10th Cir. 2008) ) (alternations in original)).

The movant must prove that no genuine issue of material fact exists for trial. *See* Fed. R. Civ. P. 56(a); *Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010). "The moving party has 'both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law." *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (quoting *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2003)). The moving party's initial burden may be met merely by

4

identifying portions of the record which show an absence of evidence to support essential elements of the opposing party's case. *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010); *Sigmon v. CommunityCare HMO, Inc.*, 234 F.3d 1121, 1125 (10th Cir. 2000). However, "[i]f the movant carries this initial burden, the nonmovant may not rest on its pleadings, but must bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Kannady*, 590 F.3d at 1169 (quoting *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996)); *Smart*, 678 F.3d at 858 (quoting *L & M Enters. v. BEI Sensors & Sys. Co.*, 231 F.3d 1284, 1287 (10th Cir. 2000)). A genuine dispute of material fact exists if the evidence is such that a "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1242 (10th Cir. 2013).

If the nonmoving party fails to make a sufficient showing on an essential element with respect to which he has the burden of proof, judgment as a matter of law is appropriate. *See Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir.2007) (quoted in *Hansen v. PT Bank Negara Indonesia (Persero)*, 706 F.3d 1244, 1247 (10th Cir. 2013)). Summary judgment "'necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits.'" *Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1023 (10th Cir.2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986)). A mere scintilla of evidence will not suffice to allow a nonmoving party to survive summary judgment. *Smith v. Rail Link, Inc.*, 697 F.3d 1304, 1309 n.2 (10th Cir. 2012). Indeed, there must be evidence on which the fact finder reasonably could find for the plaintiff. *Anderson,* 477 U.S. at 253. "In a response to a motion for summary judgment, a party cannot rest on ignorance of [the] facts, on

5

speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir.1988).

## IV. DISCUSSION

To prevail on their claim for negligent entrustment, Plaintiffs must establish that, at the time Penske gave permission to drive, Penske knew, or in the exercise of reasonable care should have known that Ms. Shelton was a careless, reckless, incompetent, inexperienced, or intoxicated driver. *Lane v. Messer*, 731 P.2d 488 (Utah 1986); Utah Model Jury Instructions, 2nd Ed. CV631.

### A. Intoxication Issue

First, Plaintiffs argue that Penske negligently entrusted a moving truck to Ms. Shelton because Penske should have known that Ms. Shelton was intoxicated. Ms. Shelton, however, has testified that she was not under the influence of methamphetamine or any other intoxicant on the day she rented the truck. Indeed, she testified that she had not used methamphetamine for at least a year and had not used marijuana for a couple of weeks, until she relapsed two hours prior to the crash.[2] Similarly, Penske's agent who assisted Ms. Shelton in renting the truck testified that she did not observe anything to suggest that Ms. Shelton was intoxicated at the time of the truck rental–only that she seemed somewhat "stressed" and "overwhelmed," which Ms. Clark attributed to the fact that Ms. Shelton was moving to another state. Even Ms. Shelton testified, "I think that it is weird how they [Plaintiffs] kept saying Penske knew or should have known . . .

---

[2] Ms. Shelton testified that she had found her abusive husband hiding in her moving truck on the morning of August 1, 2011– the morning she was leaving Grand Junction–and that she later found the methamphetamine in an eyeglass case that he had left in the truck. She testified that she injected methamphetamine at the first rest stop on the way to Tucson.

6

a lot of things. As far as me injecting methamphetamine, I don't know how in the world they would have known that, but…."[3]

Plaintiffs contend, however, that viewing the evidence in the light most favorable to them, as the non-moving party, there is a genuine issue of disputed fact about whether Ms. Shelton was under the influence of methamphetamine when she rented the Penske truck. Plaintiffs rely heavily on a written statement Ms. Shelton gave to the investigating police officer on the day of the accident. According to the statement, Ms. Shelton told the officer that she had relapsed "two *days*" earlier, which, Plaintiffs argue, would have been the day she rented the Penske vehicle. Ms. Shelton has testified that she told the officer that she had relapsed two *hours* before the accident and that the officer, who wrote Ms. Shelton's statement for her, wrote it down incorrectly. She claims she repeatedly corrected the officer, but she was sedated and ultimately signed the statement.[4]

Plaintiffs argue that a reasonable jury could conclude, based on Ms. Shelton's statement

---

[3] *See* Shelton Depo at 64.

[4] In her deposition, Ms. Shelton explained:

> And actually that police report was taken from me while I was under medication in the hospital. I never got to write it. He was writing it for me and wouldn't let me read it. He kept repeating it to me, saying the wrong thing. And I didn't understand why. And it turned out it was because he was telling me what he had written, not what I was saying to him. He threw in a couple of things that I had said in that police report, and then had me sign it. And even my signature looks like a 90-year-old stroke victim. I had blurred vision. I was under medication at that time, and -- yeah.

7

to the police that she had relapsed two days before the accident – which was the day she rented the truck. According to Plaintiffs, this conclusion is supported by Ms. Shelton's blood test on the day of the accident, which was positive for methamphetamine and marijuana, and is also supported by evidence that Ms. Shelton is a previous drug addict who was in therapy for drug addiction and other emotional issues at the time she rented the truck.[5] Based on this evidence, Plaintiffs contend that a reasonable jury could find that she was under the influence of methamphetamine when she rented the truck and that Ms. Clark should have known that Ms. Shelton was intoxicated.

While the court recognizes that the evidence must be viewed in a light most favorable to the non-moving party and that all reasonable inferences should be drawn in their favor, Plaintiffs have failed to create a genuine issue of material fact on this issue. While they have perhaps created a disputed fact about whether she was under the influence of methamphetamine at some point during the day on July 30, 2011, there is simply no evidence to support the conclusion that Ms. Shelton was intoxicated at the time she rented the truck. Even if a jury chose to discredit Ms. Shelton's testimony that the relapse occurred two hours–not two days–before the accident, and even if they believed Plaintiffs' other evidence that Ms. Shelton was in therapy for drug addiction, etc., there is simply no evidence to suggest that the relapse occurred prior to renting the truck on August 30, 2011. Moreover, a jury would also have to conclude, also without any evidentiary support, that Ms. Shelton exhibited signs of intoxication while she was renting the truck and that Ms. Clark should have detected that Ms. Shelton was intoxicated. To conclude

---

[5] The court has assumed, for purposes of this motion, that evidence of Ms. Shelton's prior drug addiction and therapy would be admissible at trial.

that Ms. Shelton was high on methamphetamine at the time she rented the truck, that she exhibited signs of such intoxication, and that Ms. Clark should have detected this intoxication, a jury would necessarily have to speculate.

If the nonmoving party fails to make a sufficient showing on an essential element with respect to which he has the burden of proof, judgment as a matter of law is appropriate. *Hansen v. PT Bank Negara Indonesia (Persero)*, 706 F.3d 1244, 1247 (10th Cir. 2013). Plaintiffs bear the burden in this case to make a sufficient showing that Penske knew, or in the exercise of reasonable care should have known that Ms. Shelton was an intoxicated driver. *Lane v. Messer*, 731 P.2d 488 (Utah 1986). "In a response to a motion for summary judgment, a party cannot rest on . . . speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir.1988). There is simply no evidence upon which a reasonable jury could conclude that Plaintiff had demonstrated–by a preponderance of the evidence– that Ms. Shelton was in fact under the influence of methamphetamine at the time she rented the truck and that Ms. Clark should have recognized this intoxication. Accordingly, the court finds that Plaintiffs have failed to create a genuine issue of material fact that Penske negligently entrusted a moving truck to Ms. Shelton when it should have known that she was intoxicated.

### B. *Facially Valid Driver's License*

Plaintiffs' second theory of negligent entrustment is that Penske rented a moving truck to Ms. Shelton when it knew or should have known that Ms. Shelton's driver's license had been suspended. Again, Plaintiffs contend that there is a genuine issue of disputed fact on this issue, thereby precluding summary judgment.

Penske argues that the undisputed evidence demonstrates that: (1) Penske followed its procedures with respect to inspecting Ms. Shelton's driver's license prior to renting the vehicle, (2) at the time of the rental, Ms. Shelton presented a facially valid and unexpired driver's license, and (3) the fact that Ms. Shelton's driver's license was temporarily suspended (due to failure to maintain insurance) was not the proximate cause of the Plaintiffs' damages. Ms. Shelton testified that she gave her driver's license to Ms. Clark. Ms. Shelton knew that her license had been temporarily suspended for not having automobile insurance, and she was worried that she might not be able to rent a truck because of the suspension, but she admits that did not tell the Penske agent that the license had been suspended.

Ms. Clark testified that she remembered asking for Ms. Shelton's license, that Ms. Shelton presented her driver's license to Ms. Clark; and that as far as Ms. Clark could tell, Ms. Shelton's driver's license was a valid license. Ms. Clark testified that she entered Ms. Shelton's driver's license number, first and last name, expiration date, date of birth, license class, and issuing state into the computer prior to renting the truck to Ms. Shelton.

Plaintiffs, though, contend that there is a genuine dispute about whether Ms. Shelton presented a facially valid driver's license. Plaintiffs argue that a reasonable jury could conclude that Penske's agent, Ms. Clark, never asked for Ms. Shelton's driver's license, that Ms. Clark failed to recognize that the license was suspended, and/or that Ms. Clark did not confirm with any agency that the license was valid. In attempting to create a disputed fact, Plaintiffs point to some uncertainty in both women's testimony.

For example, when Ms. Shelton was asked in her deposition if her license had a hole punched in it–rendering it facially invalid–she admitted that it might have had a hole in it, but she

couldn't remember if it was her license or some other card she had. Similarly, while Ms. Clark testified that she remembers asking for Ms. Shelton's license, Plaintiffs claim that Ms. Clark was testifying as to her general practice and that she had no specific recollection of asking for Ms. Shelton's license.[6] Plaintiffs also rely on Penske's failure to produce any evidence that Ms. Shelton's driver's license information was actually obtained from Ms. Shelton because the rental agreement does not contain any information from the license. Also, Plaintiffs argue that Penske supervisor Cynthia Williamson acknowledged that because Penske's computer system simply accepts whatever driver's license information is input into the computer by the rental agent, it is possible to rent to someone without obtaining a valid driver's license (or even any license at all.)

While it would be helpful if Penske had some evidence that its agent obtained Ms. Shelton's driver's license information, it is not Penske's burden to demonstrate that it obtained this information. Rather, it is Plaintiffs' burden to demonstrate, by a preponderance of the

---

[6] Ms. Clark's testimony is as follows:
Q: Do you have a specific recollection of obtaining her driver's license information?
A: No.
Q: And if I understand what you are telling me, though, you believe that you would have to have obtained it because you can't rent it without inputting driver's license information?
A: Correct. I know I had it.
Q: You know you had it. But you can't remember that?
A: Well, no, I remember that I, -- I guess I don't understand what you mean by specific.
Q: Do you remember asking her for her driver's license?
A: Oh, yeah.
Q: And tell me everything you remember about that.
A: It is what I do with every customer, is I ask them for their license. I asked her for her license. I got the information that I needed off of it. I put all of the information in the computer. And I handed her back her license.

*See* Clark Depo. at 41-42.

evidence, that Penske failed to obtain a facially valid license from Ms. Shelton. Given the testimony presented, a jury would have to find both Ms. Shelton's and Ms. Clark's testimony unbelievable, and it would have to speculate as to what happened, given that Plaintiffs have no actual evidence on this essential element of their claim.[7] Plaintiffs cannot defeat summary judgment by speculating about the events in question. *See Doan v. Seagate Tech. Inc.*, 82 F.3d 974, 977 (10th Cir.1996) (holding that plaintiff's "[s]peculation ... will not suffice for evidence").

It is undisputed that Ms. Clark never confirmed the validity of the license with any public agency. But Plaintiffs have not provided any authority for imposing a duty on a rental agency to verify the validity of a driver's license.[8] Indeed, there are many cases in which courts have found that rental companies do not have a duty to verify the status of a facially valid driver's license or to otherwise investigate a renter's driving record. *See Young v. U-Haul Company of D.C*, 11 A.3d 247 (D.C. Ct. App. 2011); *Cousin v. Entertainment Leasing Co.-S. Cent. Inc.,* 948 So. 2d 1287 (Miss. 2007) (no evidence of negligence per se under statute requiring that owner rent vehicle only to persons "then duly licensed" where rental company accepted facially valid, unexpired licenses without further verification); *Cowan v. Jack,* 922 So. 2d 559 (La. Ct. App. 2005) (holding that car company has no duty to inquire further if a customer presents a valid driver's license); *Nunez v. A&M Rentals, Inc.,* 822 N.E.2d 743 (Ma. Ct. App. 2005) (rental

---

[7] Ms. Shelton no longer possesses the driver's license, implying that it was either lost in the accident or when she was taken into custody. Regardless of its physical existence, if the license was facially invalid, Plaintiffs presumably could have presented such evidence from the department of motor vehicles in the licensing state.

[8] Given the court's ruling on this issue, the court declines to address Penske's argument that Plaintiffs have failed to create a genuine issue of material fact regarding proximate cause.

company had no duty to verify status of license with commercially available technology to satisfy statutory requirement to rent only to holders of "a duly issued license"); *Hall v. CAMRAC, LLC,* 2013 WL 6925959 (Conn. Super. Ct. Dec. 10, 2013); *Short v. Ross*, 2013 WL 1111820 (Conn. Super. Ct. Feb. 26, 2013); *Osborn v. Hertz Corp.*, 252 Cal. Rptr. 613 (Cal. Ct. App. 1988). This court declines to create such a duty in this case.

Thus, the court finds that Plaintiffs have failed to create a genuine issue of disputed fact regarding whether Penske knew or should have known that Ms. Shelton had a suspended driver's license.

### C. *No Separate Insurance*

Finally, Plaintiffs maintain that Penske negligently entrusted its vehicle to Ms. Shelton by failing to determine whether or not Ms. Shelton had insurance to protect third-party motorists. Plaintiffs do not contend that Penske did not provide liability protection for its vehicle; but rather, that Penske had a duty to ascertain whether or not Ms. Shelton had separate automobile liability insurance prior to renting to her. While neither Colorado nor Utah has addressed whether a rental car company has a duty to ascertain whether or not a prospective renter has liability insurance, Penske argues that courts in other states have uniformly held that no such duty exists.

Whether or not a duty exists is question of law for the court to decide. *Hunsaker v. State,* 870 P.2d 893, 897 (Utah 1993); *Connes v. Molalla Transp. Sys., Inc.,* 831 P.2d 1316, 1320 (Colo. 1992). Plaintiffs have not cited any authority giving rise to a duty on Penske's part to verify that a potential renter has their own liability insurance–and the court is not aware of any such authority.

13

Indeed, it appears that courts have uniformly declined to create such a duty when it is not legislatively mandated.[9] *See.*, *e.g.*, *Enterprise Leasing Co. S. Cent., Inc. v. Bardin*, 8 So.3d 866, 868 (Miss. 2009) (finding that rental car company had no duty to refuse to rent a car to a driver who failed to produce proof that he was insured under his own automobile liability insurance company and that the court was unaware of any such authority); *Danler v. Rosen Auto Leasing, Inc.*, 609 N.W.2d 27, 32-33 (Neb. 2000) (concluding that "it is properly the province of the Legislature, and not this court, to make such a policy determination."); *Collette v. Ledet*, 640 So. 2d 757, 760 (La. Ct. App. 1994) ("Plaintiff can cite no authority giving rise to a duty on the part of [a rental-car company] to inquire into the status of [a driver's] insurance and we can find none.").

This court concludes that neither the Utah nor Colorado legislatures have imposed a duty on rental car companies to verify that a prospective renter has her own automobile liability insurance, and the court declines to do so. Accordingly, Plaintiffs' negligent entrustment claim based upon Penske's failure to verify that Ms. Shelton had her own insurance fails.

---

[9] For example, it appears that the state of Georgia requires a rental car company to ensure that a renter has his own liability insurance on the vehicle or to offer the renter "spot" insurance, which shall be purchased by the renter before the rental car company may turn the vehicle over to the renter. OCGA § 40-9-102. The coverage the renter provides is the primary coverage in the case of liability arising from the use of the rental car. However, failure by the rental car company to ensure the renter has coverage merely voids the exemption and causes the company's insurance coverage to become primary. OCGA §§ 40-9-102; 40-9-4; *A. Atlanta Autosave v. Generali-U.S. Branch*, 514 S.E.2d 651 (Ga. 1999). Georgia courts have found that when a rental car has injured plaintiffs, the rental car company's "failure to comply with OCGA § 40-9-102 was not the cause of any harm to plaintiff[s]." *Scott v. Joe Thomson Auto Rental & Leasing, Inc.,* 453 S.E.2d 475, 477 (Ga. 2002) *(quoting Alamo Rent-A-Car v. Hamilton*, 455 S.E.2d 366 (Ga. 1995)).

## V. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Penske's Motion for Summary Judgment [Docket No. 36] is GRANTED, and Plaintiffs' causes of action against Penske are DISMISSED with prejudice. Plaintiffs' causes of action against Ms. Shelton remain.

DATED this 6th day of June, 2014.

BY THE COURT:

DALE A. KIMBALL
United States District Judge